**Promissory Note**
Aircraft Loan

$1,420,000.00                                                                                              Funding Date: January 3, 2024.

      **FOR VALUE RECEIVED, SQRL AVIATION, LLC** (the "Maker"), promises to pay to the order of **JB&B CAPITAL, LLC** ("Holder"), the sum of $1,420,000.00 in lawful money of the United States of America (the "Principal"), with interest thereon as hereafter provided, to be paid in the manner set forth herein. This Promissory Note (the "Note") is executed pursuant to, and is secured by, the Mortgaged Property pledged under that certain Aircraft Mortgage and Security Agreement (the "Aircraft Security Agreement") of even date herewith between Maker as grantor and Holder as secured party. Capitalized terms used herein without definition shall have the meanings given them in the Aircraft Security Agreement or the Loan Agreement of even date herewith between Maker, Guarantors, and Holder, as applicable.

      **1.**     **Interest: Closing Rate Adjustment Place of Payment**. Interest on the balance of the Principal outstanding on this Note shall accrue from the Funding Date of this Note and shall be due and payable at a fixed rate of 12.00% per annum (the "Interest Rate").  Interest shall be paid in arrears and shall be computed on the basis of a 360-day year and actual number of days elapsed for any whole or partial month in which interest on this Note is being calculated and shall be charged on the principal balance outstanding from time to time. Holder reserves the right to require payment on this Note to be made by wired federal funds or other immediately available funds.

      **2.**     **Repayment Terms**. The Term of this Note is 96 months.  Consequently, the Principal and interest shall be due and payable in 96 consecutive monthly installments of $23,079.00 (plus any applicable taxes) each payable in arrears, commencing and to be paid on the Funding Date and on the same day of each monthly period thereafter (each, a "Note Payment Date"). For the avoidance of doubt, Maker is responsible for any and all accrued interest, outstanding principal, and any fees or other charges hereunder.   In addition, Maker will pay a late payment charge of ten percent (10%) of any payment due hereunder that is not paid on or before the date due hereunder.  Holder does not intend to charge any amount in excess of the maximum amount of time price differential or interest, as applicable, permitted to be charged or collected by applicable law and any such excess amounts will be applied to payments due under this Note, in inverse order of maturity, with any surplus refunded to Maker.

      **3.**     **Security**. Payment of the Principal and interest hereunder, and the performance and observance by Maker of all agreements, covenants and provisions contained herein, is secured by a first priority security interest in the Mortgaged Property.

      **4.**     **Prepayment.** The Note may not be prepaid from time to time or at any time except as provided herein.  The Note may not be prepaid in any manner, in whole or in part, until after the 12th Note Payment Date.  No Event of Default shall have occurred and be continuing at the time of any prepayment.  Prepayments will be applied to installments of principal in their inverse order of maturity; no prepayment shall reduce the dollar amount of any required installment payments, until the Note is paid in full; and no prepayment shall obligate Holder to re-advance all or any portion thereof.  Subject to the conditions herein, Maker may prepay, in whole or in part, the Principal outstanding hereunder together with all accrued and unpaid interest thereon as of the date of payment, plus all fees or charges incurred by Holder in connection with such prepayment, plus a prepayment premium ("Prepayment Premium") equal to a percentage of the then-current book value (determined by Holder) set forth below:

            After the 12th Note Payment Date, through the 24th Note Payment Date: 6.0%
            After the 24th Note Payment Date, through the 36th Note Payment Date: 5.0%
            After the 36th Note Payment Date, through the 48th Note Payment Date: 4.0%
            After the 48th Note Payment Date, through the 96th Note Payment Date: 3.0%

Early payments will not, unless agreed to by Holder in writing, relieve Maker of Maker's obligation to continue to make payments under the payment schedule.  Rather, early payments will reduce the principal balance due and may result in Maker making fewer payments. Maker agrees not to send Holder payments marked "paid in full," "without recourse," or similar language. If Maker sends such a payment, Holder may accept it without losing any of Holder's rights under the Note, and Maker will remain obligated to pay any further amount owed to Holder. All written communications concerning disputed amounts, including any check or other payment instrument that indicates "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to Holder pursuant to Section 14.

      **5.**     **Transfer or Assignment**. Holder may at any time assign or otherwise assign, transfer or negotiate this Note in whole or in part, without any notice to Maker or the requirement of Maker's consent thereto. The rights and obligations of Maker may not be assigned or delegated at any time.

      **6.**     **Application of Payments**. Prior to an Event of Default, each payment received on this Note shall be applied first to all costs of collection, then to unpaid late payment charges (if any) and Prepayment Premium (if any), then to

EXHIBIT B

interest as of the payment due date and the balance, if any, to the outstanding Principal as of the date received. Upon the occurrence, and during the continuance, of an Event of Default, any payments in respect of the Secured Obligations and any proceeds of the Mortgaged Property when received by Holder in cash or its equivalent, will be applied first to costs of collection and, thereafter, in reduction of the Secured Obligations in such order and manner as Holder may direct in its sole discretion, and Maker irrevocably waives the right to direct the application of such payments and proceeds and acknowledges and agrees that Holder shall have the continuing and exclusive right to apply any and all such payments and proceeds in the Holder's sole discretion, notwithstanding any entry to the contrary upon any of its books and records.

7. **Events of Default.** (a) Maker shall be in default if any of the following happens (an "Event of Default"): (1) Maker fails to make any installment of Principal or interest, or any other payment due and owing, under this Note within ten (10) days after the same becomes due and payable; or (2) Maker fails to perform any other obligation required to be performed by Maker under this Note, the Aircraft Security Agreement or any of the other Loan Documents; (3) any representation, warranty or other statement by or on behalf of Maker in connection with this Note is false or misleading in any material respect; (4) an Event of Default has occurred and is continuing under the Aircraft Security Agreement; (5) an event of default has occurred and is continuing under any agreement by and between Maker and Holder; or (6) an event of default has occurred and is continuing under any agreement by and between Guarantor and Holder.

(b) Notwithstanding anything to the contrary contained herein, upon the occurrence of an Event of Default, Holder may declare the entire outstanding balance of the Principal, together with all accrued and unpaid interest thereon, immediately due and payable without notice or demand which amounts shall, together with all other sums due hereunder, accrue interest from such acceleration until the date of actual payment at the Default Rate ("Default Rate" shall mean an annual interest rate equal to the lesser of 18% or the maximum interest rate permitted by Applicable Law). Should there occur an Event of Default, and if a voluntary or involuntary petition under the United States Bankruptcy Code is filed by or against Maker while such default remains uncured, the entire outstanding balance of the Principal automatically shall be accelerated and due and payable with interest thereon at the Default Rate and Holder may exercise any and all of its remedies hereunder, under the other Loan Documents and under Applicable Law ("Applicable Law" shall mean all applicable federal, state, local and foreign laws, ordinances, judgments, decrees, injunctions, writs, rules, regulations, orders, licenses, and permits of any governmental agency). The remedies of Holder provided herein, in the Aircraft Security Agreement and under Applicable Law shall be cumulative and concurrent and may be pursued singly, successively, or concurrently at the sole discretion of Holder and may be exercised as often as occasion therefor shall occur. The failure to exercise, or any delay in the exercise of, any right or remedy shall in no event be construed as a waiver, release, or exhaustion of any such remedies.

8. **Collection Costs.** In addition to the Principal, interest, Prepayment Premium (if any), and late payment charges (if any), Maker shall pay Holder on demand, and Holder shall be entitled to collect all costs and expenses of collection, including, without limitation, reasonable attorneys' fees and expenses, incurred in connection with enforcement of its rights and remedies hereunder and under the other Loan Documents, the protection or realization of the Mortgaged Property or in connection with Holder's collection efforts, or in connection with any bankruptcy or other judicial proceeding, whether or not suit on this Note or any foreclosure proceeding is filed. All such costs and expenses shall be payable on demand and, until paid, shall be Secured Obligations secured by the security interest granted under the Aircraft Security Agreement and all other collateral, if any, held by Holder as security for Maker's obligations under this Note.

9. **Governing Law: Binding Agreement**. The provisions of this Note shall be binding upon, and shall inure to the benefit of, the parties hereto and their respective successors and assigns. **THIS AGREEMENT IS BEING DELIVERED IN, AND SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF, THE STATE OF TENNESSEE, INCLUDING ALL MATTERS OF CONSTRUCTION, VALIDITY AND PERFORMANCE, WITHOUT GIVING EFFECT TO ANY CHOICE OF LAW OR CONFLICT OF LAWS. ANY ACTION BETWEEN THE PARTIES ARISING OUT OF OR RELATING TO THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY, INCLUDING NON-CONTRACTUAL CLAIMS, SHALL ONLY BE BROUGHT IN ANY STATE COURT LOCATED IN THE STATE OF TENNESSEE OR THE UNITED STATES DISTRICT COURT LOCATED IN KNOXVILLE, TENNESSEE; PROVIDED, THAT AT HOLDER'S SOLE OPTION, HOLDER MAY BRING AN ACTION IN THE STATE OR OTHER JURISDICTION WHERE MAKER OR THE MORTGAGED PROPERTY IS LOCATED. MAKER IRREVOCABLY WAIVES OBJECTIONS TO THE JURISDICTION OF SUCH COURTS AND WAIVES ANY ARGUMENT THAT VENUE IN ANY SUCH FORUM IS NOT CONVENIENT.**

10. **More than One Signer.** If more than one person or entity signs this Note as a Maker, the obligations contained herein shall be deemed joint and several and all references to "Maker" shall apply both jointly and severally.

11. **General.** Maker represents and warrants that this Note evidences a loan for business or commercial purposes. Prior to signing this Note, Maker read and understood the provisions hereof, and agrees to all terms and conditions contained herein.

12. **Waiver.** **MAKER AND ALL ENDORSERS, SURETIES, AND GUARANTORS HEREOF HEREBY JOINTLY AND SEVERALLY WAIVE PRESENTMENT FOR PAYMENT, DEMAND, NOTICE OF NON-PAYMENT OR DISHONOR, NOTICE OF INTENTION TO ACCELERATE THE MATURITY, OR NOTICE OF PROTEST AND PROTEST OF THIS NOTE. HOLDER AND MAKER HEREBY EACH WAIVE THEIR RESPECTIVE RIGHTS TO TRIAL BY JURY OF ANY CLAIM OR CAUSE OF ACTION BASED UPON OR ARISING OUT OF OR RELATED TO THIS NOTE, THE OTHER LOAN DOCUMENTS OR THE TRANSACTIONS CONTEMPLATED HEREBY OR THEREBY IN ANY ACTION OR PROCEEDING**

**TO WHICH HOLDER OR MAKER MAY BE PARTIES, WHETHER WITH RESPECT TO CONTRACT CLAIMS, TORT CLAIMS, OR OTHERWISE, INCLUDING WITHOUT LIMITATION ANY ACTION, COUNTERCLAIM OR OTHER PROCEEDING WHICH SEEKS, IN WHOLE OR IN PART, TO CHALLENGE THE VALIDITY OR ENFORCEABILITY, OF THIS NOTE OR THE OTHER LOAN DOCUMENTS OR ANY PROVISION HEREOF OR THEREOF. THIS WAIVER IS MADE KNOWINGLY, WILLINGLY AND VOLUNTARILY BY HOLDER AND THE MAKER WHO EACH ACKNOWLEDGE THAT NO REPRESENTATIONS HAVE BEEN MADE BY ANY INDIVIDUAL TO INDUCE THIS WAIVER OF TRIAL BY JURY OR IN ANY WAY TO MODIFY OR NULLIFY ITS EFFECT. THIS WAIVER SHALL APPLY TO ANY SUBSEQUENT AMENDMENTS, RENEWALS, SUPPLEMENTS OR MODIFICATIONS TO THIS NOTE AND THE OTHER LOAN DOCUMENTS.**

13. **Usury: Partial Invalidity.** (a) At no time shall the interest rate or implied interest rate exceed the highest rate allowed by applicable law for this type of loan. Should Holder ever collect interest at a rate that exceeds such applicable legal limit, such excess will be credited to the Principal.

(b) Whenever possible, each provision of this Note shall be interpreted in such manner as to be effective and valid under applicable law, but if any provision of this Note shall be prohibited by or invalid under the laws of any applicable jurisdiction, such provision, as to such jurisdiction, shall be ineffective to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Note in any other jurisdiction.

14. **Notices.** All notices and other communications under this Note shall be in writing and shall be addressed: (a) if to Maker, the address given for each Maker in the Loan Agreement; and (b) if to Holder, to the address given for Holder in the Loan Agreement, or such other address as either party hereto shall communicate to the other party at its or his address specified above. All such notices and other communications shall be deemed to have been duly given if delivered by hand, overnight courier or if sent by certified mail, return receipt requested, to the party to whom such notice is intended to be given, and shall be effective upon receipt.

15. **Funding Date.** The Funding Date for this Note shall be the date on which Holder disburses funds hereunder. **TO THE EXTENT THE FUNDING DATE IS LEFT BLANK ABOVE, OR DOES NOT REFLECT THE ACTUAL DATE THAT HOLDER DISBURSES FUNDS HEREUNDER, MAKER HEREBY AUTHORIZES HOLDER TO WRITE IN THE CORRECT DATE AT THE TIME OF DISBURSEMENT.**

[signature lines follow on next page]

**IN WITNESS WHEREOF,** Maker, intending to be legally bound, has executed or caused this Promissory Note to be duly executed on the day and year first above written.

**MAKER:**
**SQRL AVIATION, LLC**

DocuSigned by:
*Joseph B. Smith*
A3EB439972E74A1...

Name: Joseph B. Smith
Title: Manager of SQRL Holdings, LLC, Manager of SQRL Aviation, LLC