DocuSign Envelope ID: AC2E49DC-F1FF-4F2F-B787-7D199F2F951A

# AIRCRAFT MORTGAGE
# AND SECURITY AGREEMENT

between

## SQRL AVIATION, LLC,
as Debtor/Borrower

and

## JB&B CAPITAL, LLC,
as Lender

January 3, 2024

Airframe:
One (1) Raytheon Aircraft Company Model 390 aircraft bearing
U.S. registration number N311SQ and
manufacturer's serial number RB-005

Engine:
Two (2) Williams Model FJ44-2A engines bearing
manufacturer's serial numbers 1011 and 1012,
which each exceed the equivalent of 550 rated takeoff horsepower or
1,750 or more pounds of thrust

EXHIBIT C

FILED WITH FAA
AIRCRAFT
REGISTRATION BR
2024 JAN -3 PM 2:10
OKLAHOMA CITY
OKLAHOMA

DocuSign Envelope ID: AC2E49DC-F1FF-4F2F-B787-7D199F2F951A

## AIRCRAFT MORTGAGE AND SECURITY AGREEMENT

**THIS AIRCRAFT MORTGAGE AND SECURITY AGREEMENT** ("Mortgage") dated as of the _3rd_ day of _January_, 20_24_ between **SQRL AVIATION, LLC,** a Florida limited liability company ("Borrower"), and **JB&B CAPITAL, LLC,** a Tennessee limited liability company having an office at 109 S Northshore Drive, Knoxville, Tennessee 37919 ("Lender").

## W I T N E S S E T H :

**WHEREAS,** Borrower and Guarantors (defined in the Loan Agreement) have entered into the Loan Agreement (as defined below) with Lender of even date herewith; and

**WHEREAS,** Lender and Borrower wish that the payment of all amounts due under said Loan Agreement and the Note (as defined below) be secured by a security interest and an international interest as herein provided.

**NOW, THEREFORE,** the parties hereto agree and declare as follows:

For and in consideration of the premises hereof and to secure (i) the performance of all Secured Obligations (as defined below), and (ii) payment of all amounts due under the Loan Agreement, including the Note taken in conjunction therewith, the Borrower does hereby consent to the creation of an international interest under the Cape Town Treaty (as defined below) and does hereby mortgage, hypothecate, pledge, confirm and grant a security interest in, lien upon and right of set-off against, the property described in Granting Clauses I through IV, inclusive, whether now owned or hereafter acquired (which property, including all property hereafter specifically subjected to this Mortgage and any other agreement supplemental hereto, is referred to herein as the "Mortgaged Property"), forever with the power granted, to Lender, its successors and assigns to dispose of the Mortgaged Property:

### GRANTING CLAUSE I

All right, title and interest of the Borrower in and to the Airframe, the Parts, the Engines (all as defined below) and their components and attachments, and all manuals and log books and other documentation relating thereto, it being the intent that separate rights shall attach to the Airframe separate and apart from the Engines for purposes of the Cape Town Treaty.

DocuSign Envelope ID: AC2E49DC-F1FF-4F2F-B787-7D199F2F951A

## GRANTING CLAUSE II

All proceeds of insurance from any loss of, or damage to, any properties mentioned or referred to in Granting Clause I and any other proceeds of any kind resulting from any Event of Loss (as defined below) with respect thereto.

## GRANTING CLAUSE III

All estate, right, title, interest and claims whatsoever, at law, as well as in equity, which the Borrower has or possesses on the date of this Mortgage or to which the Borrower may hereafter become legally or equitably entitled, from, in or to the properties described in Granting Clauses I and II, inclusive, including, without limitation, the Associated Rights (as defined below), the right to receive any rent from the lease of the Aircraft or any charter or management fees derived from the use of the Aircraft, together with all accounts receivable, general intangibles, proceeds and chattel paper evidencing any of the foregoing.

## GRANTING CLAUSE IV

All right, title and interest of Borrower in any engine and/or airframe maintenance program contracts with respect to the Aircraft and the Engines, including any reserve account (or other trust account) required thereunder.

**TO HAVE AND TO HOLD,** the Mortgaged Property under and subject to the terms and conditions set forth herein, for the benefit and security of all Secured Obligations and of all and singular the present and future holders thereof and to secure the payment and performance of the Secured Obligations, ratably and without any preference, distinction or priority as to lien or otherwise of any such Secured Obligations over any other Secured Obligation by reason of the difference in time of the actual making, issue, delivery, incurrence or sale of the respective Secured Obligations or for any other reason whatsoever, except as herein otherwise expressly provided or referred to, and so that each and every Secured Obligation, whether outstanding on the date of this Mortgage or hereafter issued and delivered or incurred shall have the same lien and security, and so that each and every such Secured Obligation shall be equally and proportionately secured hereby as if it had been made, issued, delivered and incurred simultaneously with the execution and delivery of this Mortgage.

**PROVIDED, HOWEVER,** the grants set forth herein are upon the condition that, unless and until an Event of Default has occurred and is continuing, neither Lender nor its successors or assigns shall disturb Borrower' possession and use of the Aircraft, Engines, Parts or other property constituting all or part of the Mortgaged Property, subject to the further covenants, conditions, uses and trusts, and except as specifically set forth herein; and

DocuSign Envelope ID: AC2E49DC-F1FF-4F2F-B787-7D199F2F951A

**IT IS HEREBY COVENANTED AND AGREED** by and between the parties hereto that the Mortgaged Property is to be held and applied on the further covenants, conditions, uses and trusts set forth herein:

## ARTICLE I - DEFINITIONS

    1.1   <u>Defined Terms</u>. As used in this Mortgage, except as otherwise indicated herein, the following terms shall have the meanings set forth below or in the location indicated:

    (a)   "Aircraft" shall mean one (1) Raytheon Aircraft Company Model 390 aircraft bearing U.S. registration number N311SQ and manufacturer's serial number RB-005, along with the Engines and the Parts. The Engines shall be deemed part of the Aircraft whether or not from time to time attached to the Airframe or removed from the Airframe.

    (b)   "Airframe" shall mean (i) the Aircraft, not including the Engines, it being the intent that separate rights shall attach to the Airframe separate and apart from the Engines for purposes of the Cape Town Treaty, and (ii) any and all Parts from time to time incorporated in, installed on or attached to the Aircraft and any and all Parts removed therefrom so long as Lender shall retain an interest therein in accordance with the applicable terms of this Mortgage after removal from the Aircraft.

    (c)   "Associated Rights" means all rights to payment or other performance by Borrower under an agreement which is secured by or associated with the Aircraft.

    (d)   "Cape Town Treaty" shall have the meaning provided in 49 U.S.C. §44113(1).

    (e)   "Engine(s)" shall mean the two (2) Williams Model FJ44-4A engines bearing manufacturer's serial numbers 1011 and 1012, each of which exceeds the equivalent of 550 rated takeoff horsepower or is capable of generating 1,750 or more pounds of thrust.

    (f)   "Event of Default" shall have the meaning given to it pursuant to Paragraph 4.1 of this Mortgage.

    (g)   "Event of Loss" with respect to the Aircraft or any Engine shall mean any of the following events:

        (i)   loss of the Aircraft or any Engine or the use thereof due to destruction, damage beyond repair or rendition of such Aircraft or Engine permanently unfit for normal use from any reason whatsoever;

        (ii)   any damage to the Aircraft or any Engine (including those requiring the completion of an FAA Form 337, "Major Repair And Alteration Statement") which results in an insurance settlement with respect to such Aircraft or Engine on the basis of total loss;

DocuSign Envelope ID: AC2E49DC-F1FF-4F2F-B787-7D199F2F951A

(iii)    the theft, disappearance, condemnation, confiscation, attachment, sequestration, distraint or seizure of, or requisition of title to or use or possession of, such Aircraft or Engine for a period of ninety (90) consecutive days; or

(iv)    the operation or location of the Aircraft, while under condemnation, confiscation, seizure, requisition or otherwise in any area excluded from coverage by any insurance policy in effect with respect to the Aircraft required by the provisions of this Mortgage or of the Loan Agreement.

(h)    "FAA" shall mean the United States Federal Aviation Administration, or the agency or official of the United States of America at the time administering the functions of the Federal Aviation Administration with respect to the regulation of aircraft.

(i)    "Federal Aviation Act" shall mean Subtitle VII of Title 49 of the United States Code, as amended from time to time, or any similar legislation of the United States enacted to supersede, amend or supplement such Act.

(j)    "IDERA" shall mean the Irrevocable De-Registration and Export Request Authorizations from the Borrower substantially in the form of Annex I hereto.

(k)    "Insurance Certificate" shall mean a certificate of a Qualified Insurance Broker.

(l)    "International Registry" shall mean the international registry established under the Cape Town Treaty.

(m)    "International Registry Procedures" shall mean the official English language text of the Procedures for the International Registry issued by the supervisory authority thereof pursuant to the Cape Town Treaty.

(n)    "International Registry Regulations" shall mean the official English language text of the Regulations of the International Registry issued by the supervisory authority thereof pursuant to the Cape Town Treaty.

(o)    "Liens" shall mean all liens, charges, security interests, national interests, prospective international interests, international interests, leaseholds and encumbrances of every nature and description whatever, whether consensual or nonconsensual, including, without limitation, any rights of third parties under third party agreements and irrevocable de-registration and export request authorizations.

(p)    "Loan Agreement" shall mean the Loan Agreement of even date herewith between Borrower, Guarantor, and Lender.

(q)    "Mortgage" shall mean this Aircraft Mortgage and Security Agreement, as it from time to time may be supplemented or amended by any other supplements or amendments executed by and between Borrower and Lender.

DocuSign Envelope ID: AC2E49DC-F1FF-4F2F-B787-7D199F2F951A

(r)     "Mortgaged Property" shall have the meaning specified in the paragraph of introduction immediately preceding the Granting Clauses of this Mortgage.

(s)     "Note" shall mean the "Note" as defined in the Loan Agreement.

(t)     "Part(s)" shall mean all appliances, parts, instruments, avionics (including, without limitation, radio, radar, navigation systems or other electronic equipment), appurtenances, accessories, furnishings, if any, and other equipment of whatever nature (but excluding any complete Engine), so long as the same shall be (i) incorporated or installed in or attached to the Aircraft or any Engine, at any time, or (ii) otherwise subject to this Mortgage.

(u)     "Person" shall mean an individual, a corporation, a limited liability company, a partnership, an unincorporated organization, an association, a joint-stock company, a joint venture, a trust, an estate or a government or any agency or political subdivision thereof.

(v)     "Qualified Insurance Broker" shall mean an aircraft insurance broker, designated by Borrower and satisfactory to Lender.

(w)     "Re-registration POA" shall have the meaning specified in Section 3.1(a).

(x)     "Secured Obligations" shall mean (i) all obligations of Borrower under the Loan Agreement and the Note and any  interest rate swap, or other similar transaction and all confirmations executed thereunder in respect of any transaction that is entered into between Borrower and Lender or any affiliate of Lender, and (ii) all obligations of Borrower under this Mortgage and all future obligations under any loan agreements, promissory notes and other obligations of Borrower to Lender arising from the Loan Agreement.

Capitalized terms not otherwise defined in this Mortgage shall have the meanings set forth in the Loan Agreement.

## ARTICLE II - REPRESENTATIONS AND WARRANTIES

2.1     <u>Ownership; Priority Lien; No Violation</u>.  The Borrower represents and warrants that on the date of execution of the Note and this Mortgage and for as long as the Note and this Mortgage shall remain in full force and effect:

(a)     The Mortgaged Property then being subjected to this Mortgage are free and clear of all Liens, except the lien of this Mortgage and the IDERA, Liens permitted by Section 3.7(b), Liens as mutually agreed by the parties, Liens for taxes either not yet due or being contested by Borrower in good faith and inchoate materialmen's, mechanic's, workmen's, repairmen's, employee's or other like Liens arising in the ordinary course of business of Borrower for sums not yet delinquent or being contested in good faith, and by appropriate proceedings (but only so long as such proceedings do not, in the Lender's opinion, involve any material danger of the sale, forfeiture or loss of such Airframe, Engine, or Part, or any interest, including the Lender's security interest or International Interest therein or related thereto) and for

DocuSign Envelope ID: AC2E49DC-F1FF-4F2F-B787-7D199F2F951A

the purposes of this Mortgage, the Borrower shall be deemed to be the legal title holder of the Mortgaged Property;

(b)      This Mortgage has been duly executed and delivered by Borrower.  This Mortgage is enforceable in accordance with its terms against Borrower and third parties subject, as to enforcement, to bankruptcy, insolvency, reorganization and other laws affecting creditors' rights generally and to general equity principles;

(c)      Neither the execution and delivery by Borrower of this Mortgage nor compliance by Borrower with any of the terms and provisions of this Mortgage will, in any way, conflict with, result in any breach of, or constitute a default under, or result in the creation of any Lien (other than the lien permitted under this Mortgage) upon any property of Borrower under:

(i)      any statute, rule or regulation of any state or any statute, rule or regulation of the United States of America;

(ii)      any treaties, conventions or international regulations, including, without limitation, the Cape Town Treaty, the International Registry Regulations and the International Registry Procedures;

(iii)      any indenture, mortgage, chattel mortgage, deed of trust, conditional sales contract, bank loan, credit agreement or other agreement or instrument to which Borrower is a party or by which it or any of its properties may be bound or affected; or

(iv)      any order, writ, injunction, decree, judgment, award, determination, direction or demand of any federal, state, municipal or other governmental department, court, commission, board, bureau, agency or instrumentality, domestic or foreign, which is binding on Borrower.

2.2      Insurer's Certificate.  Borrower shall deliver, or cause to be delivered to Lender an Insurer's Certificate as to the due compliance with the insurance provisions of Paragraph 3.4 hereof. A full copy of the insurance policy shall be delivered to Lender within thirty (30) days following funding or sooner if requested by Lender.

## ARTICLE III - COVENANTS OF BORROWER

3.1      Registration, Maintenance and Operation of Aircraft and Engines.

(a)      Registration and IDERA.

(i)      At or prior to the Closing Date (as defined in the Loan Agreement), at its own cost and expense, and at all times during the term of this Mortgage, Borrower shall (A) cause the Aircraft to be duly registered in the names of Borrower in accordance with the Federal Aviation Act, and the Aircraft shall not be registered under the laws of any other country without the prior written consent of

DocuSign Envelope ID: AC2E49DC-F1FF-4F2F-B787-7D199F2F951A

Lender; (B) cause this Mortgage to be registered as an international interest on the International Registry; and (C) remain registered as a transacting user entity with the International Registry. In furtherance thereof, the Borrower shall consent, through its professional user entity, to international registration upon issuance of the request for consent by the International Registry. At least ninety (90) days prior to the date that any registration of the Aircraft shall expire, the Borrower shall, at its expense, furnish (or cause to be furnished) to Lender a new or renewed (as the case may be) certificate of registration for the Aircraft, verifying that the Aircraft is properly registered with the FAA in accordance with the requirements of this Section 3.1. Accordingly, the parties acknowledge and agree that, as a condition precedent to the funding of the loan described in the Loan Agreement, the Borrower shall execute and deliver in favor of Lender an irrevocable power of attorney (and any necessary authorizing documents) in form(s) acceptable to Lender, providing Lender with the power, in Lender's sole discretion, to re-register or renew the registration of the Aircraft ("Re-registration POA") should Borrower fail to timely complete such process. Lender shall not exercise the Re-registration POA or file the Re-registration POA with the FAA unless Borrower have failed to provide evidence of the re-registration (or renewal of the registration) of the Aircraft at least ninety (90) days prior to the date that any registration shall expire as described above. It is understood that Lender shall have the right to exercise its powers under the Re-registration POA, but shall not be obligated to do the same. In the event this Mortgage is assigned by Lender, the Borrower agrees to execute a new Re-registration POA in favor of such assignee in a form substantially similar to the original Re-registration POA. When the Secured Obligations shall have been indefeasibly and fully paid, then the Re-registration POA shall automatically terminate and be deemed to cease to exist.

(ii)     Borrower shall not allow the name of any Person other than Lender to be placed on the Airframe and Engines as a designation that might be interpreted as a Lien thereon, provided, that Borrower may cause the Aircraft to be lettered and otherwise marked in an appropriate manner for convenience of identification of the interest therein of Borrower.

(iii)     Borrower shall not (A) consent to any Person other than Lender making any registrations in the International Registry in relation to the Airframe and Engines, or (B) execute and deliver any irrevocable de-registration and export request authorization to any Person other than the IDERA in favor of Lender.

(iv)     Borrower shall execute and deliver the IDERA, and cause the same to be filed in accordance with the Federal Aviation Act.

(b)     Maintenance. After the Closing Date, and except as may otherwise be agreed in writing by Borrower and Lender, Borrower, at its own cost and expense during the term of the Loan Agreement and until full and complete payment of the Note and of all amounts due or to become due under the Loan Agreement, shall (or in each case listed below shall cause the following to occur):

DocuSign Envelope ID: AC2E49DC-F1FF-4F2F-B787-7D199F2F951A

(i)     Borrower shall maintain and keep the Aircraft in as good condition and repair as it is on the date of this Loan Agreement, ordinary wear and tear excepted, at its own cost and expense, and will service, repair, maintain, overhaul, test, or cause the same to be done to the Aircraft so as to keep the Aircraft in such operating condition as is required by an approved maintenance service program, and as may be necessary to enable the Certificate of Airworthiness of the Aircraft to be maintained in good standing and at all times be in compliance with the regulations of the FAA and applicable law.

(ii)    Borrower shall maintain and keep the Aircraft in good order and repair and in airworthy condition in accordance with the requirements of each of the manufacturers' manuals and mandatory service bulletins.  Borrower shall cover the maintenance reporting under a third-party computerized maintenance tracking program, at Borrower' expense.  Borrower shall enroll or maintain enrollment of the Engines in maintenance plans with the manufacturer thereof in form and substance acceptable to the Lender, containing terms and conditions satisfactory to Lender in all respects, and further shall enter into aircraft interest holder's agreements with respect to said maintenance agreement acceptable to Lender within sixty (60) days after Closing.

(iii)   Borrower shall replace in or on the Airframe, any and all Engines, parts, appliances, instruments or accessories which may be worn out, lost, destroyed or otherwise rendered unfit for use.

(iv)    Borrower shall cause to be performed, on all parts of the Aircraft, all applicable mandatory Airworthiness Directives, Federal Aviation Regulations, and Special Federal Aviation Regulations, the compliance date of which shall occur while this Agreement is in effect.

(v)     Borrower shall be responsible for all required inspections of the Aircraft and licensing or re-licensing of the Aircraft in accordance with all applicable FAA and other governmental requirements. Borrower shall at all times cause the Aircraft to have on board and in a conspicuous location a current Certificate of Airworthiness issued by the FAA.

(vi)    All inspections, maintenance modifications, repairs, and overhauls of the Aircraft (including those performed on the Airframe and the Engines or any components, appliances, accessories, instruments or equipment) shall be performed by personnel authorized by the FAA to perform such services.

(vii)   If any Engine, component, appliance, accessory, instrument, equipment or Part shall reach such a condition as to require overhaul, repair or replacement, for any cause whatever, in order to comply with the standards for maintenance and other provisions set forth in this Agreement, Borrower may:

(a)     Install on or in the Aircraft such items of substantially the same type in temporary replacement of those then installed on the Aircraft, pending overhaul or repair of the unsatisfactory item; provided, however, that

DocuSign Envelope ID: AC2E49DC-F1FF-4F2F-B787-7D199F2F951A

such replacement items must be in such a condition as to be permissible for use upon the Aircraft in accordance with the standards for maintenance and other provisions set forth in this Agreement; provided further, however, that Borrower at all times must retain unencumbered title to any and all items temporarily removed; or

(b)     Install on or in the Aircraft such items of substantially the same type and value in permanent replacement of those then installed on the Aircraft; provided, however, that such replacement items must be in such condition as to be permissible for use upon the Aircraft in accordance with the standards for maintenance and other provisions set forth in this Agreement; provided further, however, that Borrower must first comply with each of the requirements below. Additionally, Borrower may not install any non-OEM "PMA" parts at any time or from time to time.

(viii)   In the event Borrower shall be required or permitted to install upon the Airframe or any Engine, components, appliances, accessories, instruments, engines, equipment or parts in permanent replacement of those then installed on the Airframe or such Engine, Borrower may do so provided that, in addition to any other requirements of this Agreement:

(a)     Lender is not divested of its security interest in and lien upon any item removed from the Aircraft and that no such removed item shall be or become subject to the lien or claim of any person, unless and until such item is replaced by an item of the type and condition required by this Agreement, title to which, upon its being installed or attached to the Airframe, is validly vested in Borrower, free and clear of all Liens and claims, of every kind or nature, except those which might arise on rotable parts (not Engine(s)) in the ordinary course of business, of all persons other than Lender or the holder of the interest in the rotable part;

(b)     Borrower' title to every substituted item shall immediately be and become subject to the security interests and liens of Lender and each of the provisions of this Agreement, and each such item shall remain so encumbered and so subject unless it is, in turn, replaced by a substitute item in the manner permitted in this Agreement; and

(c)     If an item is removed from the Aircraft and replaced in accordance with the requirements of this Agreement, and if the substituted item satisfies the requirements of this Agreement, including the terms and conditions above, then the item which is removed shall thereupon be free and clear of the security interests and liens of Lender.

(ix)   In the event that any Engine, component, appliance, accessory, instrument, equipment or part is installed upon the Airframe, and is not in substitution for

DocuSign Envelope ID: AC2E49DC-F1FF-4F2F-B787-7D199F2F951A

or in replacement of an existing item, such additional item shall be considered as an accession to the Airframe.

(c)     Operations.  Borrower shall not permit the Aircraft and any Engine to be maintained, serviced, repaired, overhauled, tested, used or operated in violation of any law or any rule, regulation or order of any governmental authority having jurisdiction thereover, or in violation of any airworthiness certificate, license or registration relating to the Aircraft or any Engine issued by any such authority, or in violation or breach of any representation or warranty made with respect to obtaining insurance on the Aircraft or any term or condition of such insurance policy.  Borrower shall not sell, assign, mortgage, relinquish possession, or lease the Mortgaged Property to any other Party without Lender's prior written consent, which consent shall not be unreasonably withheld.  Borrower shall not operate the Aircraft (or cause the Aircraft to be operated) under a Part 135 Certificate or in a manner that would require a Part 135 Certificate without the prior written consent of Lender, which consent shall not be unreasonably withheld.  Borrower shall ensure that all pilots serving on any flight with respect to the Aircraft, holds at a minimum, current and valid Commercial Pilot and Second Class Medical Certificates issued by the FAA, and are fully competent, trained, experienced, and qualified in accordance with all insurance policies covering the Aircraft.

3.2     Alterations, Modifications and Additions.

(a)     Alterations, Modifications and Additions.  Borrower, at its own cost and expense, shall make such alterations and modifications in and additions to the Aircraft and Engines as may be required from time to time to meet all applicable standards of the Federal Aviation Administration or other governmental authority having jurisdiction over the Aircraft and Engines.

So long as no Event of Default shall have occurred and be continuing, Borrower, at its own cost and expense, and from time to time, may make such alterations and modifications in, and additions to, the Aircraft and any Engine as Borrower may deem desirable in the proper conduct of its business; provided, that no such alteration, modification or addition shall diminish the value or utility of the Aircraft or such Engine, or impair the condition or airworthiness thereof, below the value, utility, condition or airworthiness thereof immediately prior to such alteration, modification or addition assuming the Aircraft or such Engine were measured by the value, utility and airworthiness, and in the condition and state of repair required to be maintained by the terms hereof.  All Parts incorporated or installed in or attached to or added to the mortgaged Aircraft or any mortgaged Engine as the result of any alteration, modification or addition shall conform to the requirements of Paragraph 3.2(a) hereof and, without further act or deed, shall become subject to the lien of this Mortgage and the international interest in favor of Lender.

So long as no Event of Default shall have occurred and be continuing, Borrower, at any time, may remove any Part from the Aircraft or Engine if:

(i)     such Part is in addition to, and not in replacement of, or substitution for, any Part incorporated or installed in or attached to the Aircraft or any Engine;

DocuSign Envelope ID: AC2E49DC-F1FF-4F2F-B787-7D199F2F951A

(ii)    such Part is not required to be incorporated or installed in, or attached or added to, the Aircraft or such Engine pursuant to the terms of Paragraphs 3.1(b), 3.1(c) or Paragraph 3.2 hereof; and

(iii)    such Part can be readily removed from the Aircraft or any Engine without diminishing or impairing the value, utility, condition and airworthiness of the Aircraft or such Engine.

Upon any such removal, such Part shall cease to be a "Part" within the meaning hereof.

(b)    Liability of Lender.  Unless Lender breaches any provision under the Secured Obligations or fails to act in accordance with applicable law, Lender shall not bear any liability or cost for any alteration, modification or addition, or for any grounding or suspension of certification of the Aircraft or any Engine, or for loss to Borrower of any revenue in respect of the Aircraft or any Engine, however arising.

3.3    Event of Loss.

(a)    Event of Loss with Respect to the Aircraft.  Upon the occurrence of an Event of Loss with respect to the Aircraft, Borrower shall give Lender prompt written notice thereof, stating the circumstances of such Event of Loss.  No later than one hundred twenty (120) days after the date of such Event of Loss, Borrower shall repay the outstanding principal balance under the Loan Agreement and the Note and all other Secured Obligations in full provided that, for avoidance of doubt, Borrower shall remain liable to make all payments owed to Lender in accordance with the terms of any Loan Document in the interim.

(b)    Event of Loss with Respect to a Mortgaged Engine.  Upon the occurrence of an Event of Loss with respect to any Engine, which Event of Loss does not constitute an Event of Loss with respect to the Aircraft, Borrower shall give Lender prompt written notice thereof, stating the circumstances of such Event of Loss.  As soon as possible, but no later than thirty (30) days after the date of such Event of Loss, Borrower shall:

(i)    repay the outstanding principal balance under the Note and all other Secured Obligations in full, or

(ii)    enter into, at the expense of Borrower, an agreement in all respects satisfactory to Lender for the purchase of a new Engine compatible with the Aircraft to replace the Engine which is the subject of such Event of Loss.

Upon delivery of such new Engine pursuant to such agreement, Borrower shall cause such new Engine to be installed on the Aircraft and specifically subject such new Engine to the lien hereof and the international interest in favor of Lender, delivering to Lender all documents required or useful in connection therewith and consenting to the registration of an international interest with the International Registry with respect to such new Engine.  Lender shall execute and deliver all documents required or useful in connection with releasing the replaced Engine

DocuSign Envelope ID: AC2E49DC-F1FF-4F2F-B787-7D199F2F951A

from the lien of this Mortgage and shall discharge all registrations with the International Registry with respect to the replaced Engine.

        3.4     <u>Insurance</u>. At or prior to the Closing Date, and without limiting the requirements of the Loan Agreement, Borrower will carry, or cause to be carried, at the cost and expense of Borrower, public liability insurance (including, without limitation, passenger legal liability), property damage insurance (including, without limitation, airport property damage liability and contractual liability), and all-risk ground and flight aircraft hull insurance (including, without limitation, war risk, hijacking and similar perils insurance). The insurance requirements are set forth in more specificity in the Agreement to Provide Insurance (defined in the Loan Agreement).

        3.5     <u>Location of Aircraft</u>. Borrower shall at all times keep the Aircraft registered under the laws of the United States of America. Borrower shall base the Aircraft at [●] and Borrower shall not operate or locate the Aircraft or any Engine or permit the Aircraft or any Engine to be operated or located in:

        (a)     any area or on any route excluded from coverage under the provisions of any insurance policy required by the terms of Paragraph 3.4 above; or

        (b)     any recognized, or, in Lender's sole judgment, threatened area of hostilities unless fully covered to Lender's satisfaction by war risk insurance.

        3.6     <u>Application of Insurance Proceeds</u>.

        (a)     Proceeds of insurance received as a result of an Event of Loss with respect to the Aircraft shall be applied by Lender to payment of the Secured Obligations in the manner provided in Paragraph 4.5 hereof.

        (b)     Proceeds of property damage insurance payable as a result of an Event of Loss of any Engine (but not the whole Aircraft) shall be held by Lender until Borrower shall have decided whether or not to purchase a new engine as required by Paragraph 3.3(b). If Borrower elect to replace the Engine, then, upon placing such an order, such proceeds, upon the request of Borrower, shall be applied directly to payment (including any progress payment) for such repair or the purchase of a replacement Engine, provided, that all rights of Borrower in, to and under such contract for such repair or the purchase of a replacement Engine shall first have been assigned to Lender in a manner reasonably satisfactory in form and substance to Lender. Unless a Default or Event of Default shall have occurred and be continuing, such proceeds (or balance thereof remaining after payment in full for such repair or such replacement Engine) shall be paid to Borrower upon completion of such repair or installation of the replacement Engine on the Aircraft and its subjection to the lien hereof and international interest in favor of Lender as required by Paragraph 3.3(b) above.

        (c)     Unless a Default or Event of Default shall have occurred and be continuing and except as provided in Paragraph 3.6(d), any proceeds of insurance received as a result of any damage or loss not constituting an Event of Loss shall be held by Lender, or upon

DocuSign Envelope ID: AC2E49DC-F1FF-4F2F-B787-7D199F2F951A

the request of Borrower, applied by Lender directly to payment (including any progress payment) for any repair or replacement required by the terms hereof. Unless a Default or Event of Default shall have occurred and be continuing, after completion of, and payment for, such repair or replacement, such proceeds, or any excess over the cost of such repair or replacement if such proceeds shall have been applied by Lender to payment for such repair or replacement, shall be forthwith paid over to Borrower by Lender.

(d)    Unless a Default or Event of Default shall have occurred and be continuing, any proceeds of insurance received as a result of any damage or loss to Parts which Borrower are entitled to remove pursuant to Paragraph 3.2(a) above without replacement shall be forthwith paid over to Borrower by Lender.

3.7    Liens on Mortgaged Property; Taxes.

(a)    Borrower shall always maintain this Mortgage as a first priority security interest, international interest, and lien upon the Mortgaged Property and Borrower shall cause the international interest in favor of Lender to always remain the only registered international interest with respect to the Airframe and Engines. Borrower shall not directly or indirectly create, assume or permit, or suffer to be created and to exist, any Lien on or with respect to any Mortgaged Property, title thereto or any interest therein. Borrower shall promptly, at its own cost and expense, take such action as may be necessary to duly discharge any Lien on or with respect to any Mortgaged Property, title thereto or any interest therein.

(b)    Borrower shall pay and indemnify Lender for, and hold Lender harmless from and against, all income (other than Lender's income), franchise, gross receipts, rental, sales, use, excise, personal property, *ad valorem*, value added, leasing, leasing use, stamp, landing, airport use or other taxes, levies, imposts, duties, charges, fees or withholdings of any nature, together with any penalties, fines or interest thereon (the "Tax(es)") arising out of transactions contemplated by this Mortgage and imposed against Lender, Borrower or the Aircraft, or any part thereof, by the United States of America, any foreign government, any state, municipal or local subdivision, any agency or instrumentality thereof or any taxing authority upon or with respect to the Aircraft, or any part thereof, or upon the ownership, delivery, leasing, possession, use, operation, return, transfer or release thereof, or upon the rentals, receipts or earnings arising therefrom, or upon or with respect to this Mortgage. If a claim is made against Lender for any Tax that is subject to indemnification hereunder, Lender shall notify Borrower promptly within thirty (30) days after Lender's receipt of such written notice, and Borrower will pay such Tax promptly and in no event later than thirty (30) days after such notice In case any report or return is required to be made with respect to any Taxes, Borrower will either (after notice to Lender) make such report or return in such manner as will show the ownership of the Aircraft in Borrower and send a copy of such report or return to Lender or will notify Lender of such requirement and make such report or return in such manner as shall be satisfactory to Lender. Lender agrees to cooperate fully with Borrower in the preparation of any such report or return.

3.8    Further Assurances. Borrower, from time to time, shall perform or execute and deliver, or cause to be performed or executed and delivered, all such further and other acts, conveyances, transfers, instruments and assurances as may be reasonably appropriate, or as may

DocuSign Envelope ID: AC2E49DC-F1FF-4F2F-B787-7D199F2F951A

be requested by Lender, for the better mortgaging, hypothecating, confirming, pledging, granting and perfecting of a lien and security interest unto Lender or a registered international interest in favor of Lender, in all or in part, of the Mortgaged Property or for facilitating the execution of the lien or international interest created by this Mortgage or for securing to Lender the benefit hereof and of the rights and remedies created hereby. Borrower, at all times, shall defend and protect the lien of this Mortgage on the Mortgaged Property against the enforcement of all Liens, claims, penalties and rights asserted by any and all Persons whatsoever.

3.9     Recording and Filing. Without limiting Paragraph 3.8 above, Lender, at the cost and expense of Borrower, shall cause this Mortgage and any and all additional instruments which shall be executed pursuant to the terms hereof, of the Note or of the Loan Agreement, so far as permitted by applicable laws and regulations, on and at all times after the date of execution to be kept, and this Mortgage filed and recorded in such places as may be required under applicable law, or as Lender, in its discretion, may reasonably request to perfect and preserve the lien of this Mortgage on all of the Mortgaged Property and to protect the security and the rights and remedies of Lender hereunder. Without limiting the foregoing, Borrower shall do, or cause to be done, any and all acts and things as may be reasonably requested by Lender to (i) perfect the lien of this Mortgage pursuant to the Uniform Commercial Code as in effect in any jurisdiction with respect to any portion of the Mortgaged Property subject to the provisions of such Code and (ii) consent to and maintain the registered international interest in favor of Lender under the Cape Town Treaty. Borrower shall bear the entire cost and expense of all actions required to be taken pursuant to Paragraph 3.8 and 3.9 hereof.

3.10    Suits to Protect the Mortgaged Property. Lender shall have power to institute and to maintain, at Borrower's cost and expense, such suits and proceedings as Lender may deem expedient to prevent any impairment of the Mortgaged Property by any acts which may be unlawful or in violation of this Mortgage or to preserve or protect the interests of Lender in the Mortgaged Property, including power to institute and maintain suits or proceedings to restrain the enforcement of or compliance with any legislative or other governmental enactment, rule or order that may be unconstitutional or otherwise invalid, if the enforcement of, or compliance with, such enactment, rule or order would impair the security hereunder or be prejudicial to the interests of Lender.

3.11    Inspection by Lender. Borrower shall permit the Lender to inspect the Mortgaged Property no less frequently than annually (including, without limitation, any and all manuals, log books, records and all other documentation relating to the Mortgaged Property, whether in the possession of Borrower or any third party maintenance provider) at such times and upon such prior notice as Lender may from time to time request. Lender shall have no duty to make any such inspection and shall not incur any liability or obligations by reason of not making any such inspection. All such inspections shall be at the cost of Borrower.

3.12    Third Party Inspections. Borrower shall cause to be prepared and delivered to Lender by December 31 of each year or upon request of Lender a third-party annual inspection report of the Aircraft, issued by a qualified appraiser or other inspector in form and substance satisfactory to Lender and not containing any exceptions or discrepancies unacceptable to Lender, which inspection shall include, without limitation, any and all manuals, log books,

DocuSign Envelope ID: AC2E49DC-F1FF-4F2F-B787-7D199F2F951A

records and all other documentation relating to the Mortgaged Property, whether in the possession of Borrower or any third party maintenance provider.

## ARTICLE IV - DEFAULT AND REMEDIES

4.1     Events of Default.  If one (1) or more of the following events (each an "Event of Default") shall occur:

(a)     Borrower fails to make any payment when due under the Note;

(b)     Default by Borrower in the payment of any other amounts payable under this Mortgage or the Loan Agreement or any other Loan Document;

(c)     Default shall be made in the due observance or performance of any other term, covenant or agreement contained in this Mortgage or in the Loan Agreement or any other Loan Document, and such Default shall not have been cured within a period of thirty (30) days following written notice from Lender to cure such Default(except in the case of subsection (g) with respect to the maintenance of insurance, which shall constitute an immediate Event of Default);

(d)     Any representation or warranty made by Borrower herein or in the Loan Agreement or any statement or representation made in any certificate, report or opinion delivered in connection herewith shall prove to have been misleading in any material respect when made;

(e)     Borrower fails or becomes unable generally to pay its debts as they come due, makes an assignment for the benefit of creditors, has a compulsory winding up order made against it or resolves to be wound up voluntarily, files a petition in bankruptcy or for relief under any bankruptcy or insolvency law, is adjudicated insolvent or bankrupt, petitions or applies to any tribunal for any receiver of or any trustee for Borrower or any substantial part of its property, commences any proceeding relating to Borrower under any reorganization, arrangement, or readjustment of debt, dissolution or liquidation law or statute of any jurisdiction whether now or hereafter in effect, or if there is commenced against Borrower any such proceeding and not dismissed sixty (60) days thereafter;

(f)     This Mortgage shall cease to be in full force and effect or shall cease to give Lender the rights and interests purported to be created hereunder, including, without limitation, the failure of the interests granted hereunder to constitute a registered international interest in the Airframe and Engines subject to the Cape Town Treaty;

(g)     The failure by Borrower to maintain the insurance coverage with respect to the Aircraft in accordance with Section 3.4;

(h)     the occurrence of an event of default of Borrower or any Guarantor (as defined in the Loan Agreement) under any other agreement between Borrower or any Guarantor and Lender or any of Lender's affiliates or subsidiaries, including any instrument or agreement

DocuSign Envelope ID: AC2E49DC-F1FF-4F2F-B787-7D199F2F951A

in respect of any swap, derivative, foreign exchange, hedge or similar transactions and all confirmations executed therewith;

(i)     the death or dissolution of any Guarantor; and

(j)     the occurrence of any of the following events with respect to Borrower: (A) it enters into any transaction of merger, consolidation or reorganization without Lender's prior written consent, which shall not be unreasonably withheld; (B) it ceases to do business as a going concern, liquidates, or dissolves, or sells, transfers or otherwise disposes of all or substantially all of its assets or properties (in one or more transactions); (C) it changes the form of organization of its business without Lender's prior written consent, which shall not be unreasonably withheld;

then, upon the happening of any of the foregoing Events of Default, the Note and all amounts under the Loan Agreement shall become and be immediately due and payable upon Lender having given Borrower notice of such acceleration, and Lender shall be entitled to all other remedies available at law; provided, however, that upon the occurrence of an Event of Default specified in (e) or (g) above, the Note and all amounts under the Loan Agreement shall automatically become due and payable without notice or demand of any kind. Except as set forth in the immediately preceding sentence and this paragraph, Borrower expressly waives any presentment, demand, protest or other notice of any kind.

4.2     <u>Rights Against Mortgaged Property</u>.

(a)     If an Event of Default shall have occurred and be continuing, then and in every such case, Lender, in addition to all other rights and remedies available hereunder, shall have, at law or in equity or by statute, each of the following rights and remedies, none of which is intended to be exclusive of any other right or remedy, and each of which may be exercised either singly or, to the extent permitted by applicable law, concurrently with any one or more of the other rights or remedies:

(i)     To the extent applicable, Lender shall have the rights and remedies of a secured party under the Cape Town Treaty and/or the Uniform Commercial Code as enacted in any jurisdiction in which any of the Mortgaged Property may be located, including, without limitation, all of the rights and remedies set forth in Articles 12, 13, 15 and 20 of the Cape Town Treaty, and the Borrower hereby consents to the same. In any case, Lender may immediately, directly or by such agent as it may appoint, without demand of performance and (to the extent permitted by applicable law) without notice of its intention to sell or of time or place of sale or of redemption or other notice or demand whatsoever to Borrower, all of which are hereby expressly waived, and without advertisement, sell at public or private sale or otherwise realize upon, the whole or, from time to time, any part of the Mortgaged Property. If notice of any sale or other disposition is required by law to be given, Borrower hereby agrees that a notice sent at least fifteen (15) days before the time of any intended de-registration and export of the Mortgaged Property or intended public sale or after which any private sale or other disposition of the Mortgaged Property is to be made shall be reasonable notice of such

DocuSign Envelope ID: AC2E49DC-F1FF-4F2F-B787-7D199F2F951A

sale or other disposition.  Whenever Lender shall demand possession of any of the Mortgaged Property pursuant to this Article IV, Borrower, at their own cost and expense, shall deliver, or cause to be delivered, such Mortgaged Property without risk or expense to Lender, to such airport or airports in the continental United States of America, as shall reasonably be designated by Lender or such other place as may be mutually agreed upon by Borrower and Lender.  At the request of Lender, Borrower shall promptly execute and deliver to Lender such instruments or other documents as Lender may deem necessary or advisable to enable Lender or an agent or representative designated by Lender, at such time or times and place or places as Lender may specify, to obtain possession of all or any part of the Mortgaged Property;

(ii)     Lender, either after entry or without entry, may proceed by suit or suits, at law or in equity, to foreclose this Mortgage and to sell all or, from time to time, any part of the Mortgaged Property under the judgment or decree of a court of competent jurisdiction;

(iii)    Lender may procure the de-registration of the Mortgaged Property whether by utilizing the IDERA or otherwise;

(iv)    Lender may procure the export and shipment transfer of the Mortgaged Property from the territory in which it is situated;

(v)     Lender may take legal proceedings for the appointment of a receiver or receivers (to which Lender shall be entitled as a matter of right) to take possession of the Mortgaged Property pending the sale thereof pursuant either to the power of sale given in this Paragraph 4.2 or to a judgment, order or decree made in any judicial proceeding or the foreclosure or involving the enforcement of this Mortgage;

(vi)    Lender, either directly or by such agent as it may appoint or by means of a receiver appointed by a court therefor, may enter upon the premises of Borrower and any other premises where any of the Mortgaged Property may be located, take immediate possession of the Mortgaged Property and exclude Borrower and all other Persons therefrom, using all necessary force so to do in compliance with local law;

(vii)   Lender may appoint a trustee to take title to all or part of the Mortgaged Property on behalf of Lender and to exercise on behalf of Lender any or all of its remedies hereunder, and Borrower shall execute and deliver all such instruments and documents as Lender may reasonably request in connection therewith; and

(viii)  Upon every taking of possession pursuant to this Paragraph 4.2, Lender from time to time may make all such expenditures for maintenance, insurance, repairs, replacements, alterations, additions and improvements to and of the Mortgaged Property as Lender may deem proper.  In each such case, Lender shall have the right to hold, use operate, store, lease, control or manage the Mortgaged Property, and to exercise all rights and powers of Borrower relating to the Mortgaged Property, as Lender shall deem appropriate, including the right to enter into any and all such agreements with

DocuSign Envelope ID: AC2E49DC-F1FF-4F2F-B787-7D199F2F951A

respect to the use, operation, storage, leasing, control or management of any of the Mortgaged Property as Lender may determine.

(b)     No delay or omission of Lender in the exercise of any right, power, remedy or privilege conferred hereunder shall impair any such right, power, remedy or privilege or be construed to be a waiver of any Default or Event of Default or acquiescence therein; and every right, power and privilege given by this Mortgage to Lender may be exercised from time to time and as often as may be deemed expedient by Lender. No remedy for the enforcement of the rights of Lender shall be exclusive of or dependent on any other such remedy, but any one or more of such remedies from time to time may be exercised independently or in combination.

4.3     Relief Pending Final Determination. Without limiting the generality of Lender's other remedies set forth in this Section 4, if an Event of Default occurs, Lender may, pending final determination of its claim, obtain from a court speedy (as defined in Article 20 of the Cape Town Treaty) relief in the form of such one or more of the following orders as Lender requests:

(a)     preservation of the Mortgaged Property and its value;

(b)     possession, control or custody of the Mortgaged Property;

(c)     immobilization of the Mortgaged Property;

(d)     lease or, except where covered by sub-paragraphs (a) to (c), management of the Mortgaged Property and the income therefrom; and

(e)     if at any time Borrower and Lender specifically agrees, sale and application of proceeds therefrom.

Nothing in this Section 4.3 shall limit the availability to Lender of other forms of interim relief.

4.4     Provisions Regarding Sale. Upon any sale of any of the Mortgaged Property, whether made under the power of sale hereby given or under judgment, order or decree in any judicial proceedings, for the foreclosure or involving the enforcement of this Mortgage, to the extent permitted by applicable law:

(a)     Lender or its representative may bid for and purchase the property being sold and, upon compliance with the terms of sale, may hold, retain and possess and dispose of such property in its absolute right without further accountability, and, in paying the purchase money therefor, may assign to Borrower in lieu of cash all or any part of the Note or other Secured Obligations then outstanding or claims for interest thereon, at par, and the Note, in case the portion thereof as assigned shall be less than the amount due thereon, shall be returned to Lender after being appropriately stamped to show partial payment;

(b)     Lender or its representative may make and deliver to the purchaser or purchasers a good and sufficient deed, bill of sale and instrument of assignment and transfer of the property sold;

DocuSign Envelope ID: AC2E49DC-F1FF-4F2F-B787-7D199F2F951A

(c)     Lender or its representative is hereby irrevocably appointed the true and lawful attorney of Borrower, in its name and stead, to make all necessary deeds, bills of sale and instruments of assignment and transfer of the property thus sold and to deregister and export the property, and for that purpose it may execute and deliver all necessary deeds, bills of sale and instruments of assignment and transfer, and may substitute one (1) or more Person with like power, Borrower hereby ratifying and confirming all that its said attorney, or such substitute or substitutes, shall lawfully do by virtue hereof; but if so requested by Lender or by any purchaser, Borrower shall ratify and confirm any such sale or transfer, deregistration or export, by execution and delivering to Lender or to such purchaser all property deeds, bills of sale, instruments of assignment and transfer and releases as may be designated in any such request;

(d)     All right, title, interest, claim and demand whatsoever, either at law or in equity or otherwise, of Borrower of, in and to the property so sold shall be divested.  Such sale shall be a perpetual bar both at law and in equity against Borrower, its successors and assigns, and against any and all Persons claiming or who may claim the property sold or any part thereof from, through or under Borrower, its successor or assigns;

(e)     The receipt of the proceeds of the sale of the Mortgaged Property by Lender shall be a sufficient discharge to the purchaser or purchasers at such sale for its or their purchase money, and such purchaser or purchasers and its or their assigns or personal representatives after paying such purchase money and receiving such receipt of Lender shall not be obligated to see to the application of such purchase money or be in anyway answerable for any loss, misapplication or non-application thereof; and

(f)     To the extent it may lawfully do so, Borrower agrees that it will not, at any time, insist upon or plead, or in any manner whatsoever claim or take the benefit or advantage of, any appraisement, valuation, stay, extension or redemption laws, or any law permitting them to direct the order in which the Mortgaged Property or any part thereof shall be sold, now or at any time hereafter in force, which may delay, prevent or otherwise affect the performance or enforcement of this Mortgage or the Secured Obligations, and Borrower hereby expressly waive all benefit or advantage of any such laws and covenants, and agrees that it will not hinder, delay or impede the execution of any power granted and delegated to Lender in this Mortgage, but will suffer and permit the execution of every such power as though no such laws were in force, except that Borrower, in any event, shall have the right, prior to the disposition of any Mortgaged Property or the entering into of a binding commitment therefor, to obtain the release of such Mortgaged Property from the lien hereof and the return to Borrower thereof upon payment of the Secured Obligations in full.

4.5     Application of Monies Received by Lender.  If an Event of Default shall have occurred and be continuing, any monies collected pursuant to Article IV or otherwise constituting a part of the Mortgaged Property may be held by Lender as Mortgaged Property or, in the discretion of Lender, applied to the payment of the Secured Obligations.  When so applied, such monies shall be applied as follows:

DocuSign Envelope ID: AC2E49DC-F1FF-4F2F-B787-7D199F2F951A

FIRST, to the payment of all costs and expenses incurred in connection with the enforcement and collection of this Mortgage, the Loan Agreement or the Note;

SECOND, to the payment and performance of all Secured Obligations other than principal of the Note;

THIRD, to the payment of the principal of the Note then due and payable;

FOURTH, after all Secured Obligations shall have been paid in full, the balance shall be paid to the holders of subsequently ranking interests which have been registered with the International Registry or of which Lender has been given notice; and

FIFTH, the balance (if any) to be paid over to Borrower.

If, after application of all proceeds of the Mortgaged Property, any Secured Obligation shall remain unpaid or unperformed, Borrower shall remain liable thereon for the deficiency, and Lender shall preserve its right to assert claims for the deficiency against Borrower under the Loan Agreement and the Note.

4.6     Waiver of Defaults.  By written notice to Borrower, Lender may waive any default hereunder and its consequences.  Upon any such waiver, such default shall cease to exist, and any Default or Event of Default arising therefrom shall be deemed to have been cured for every purpose of this Mortgage; but no such waiver shall extend to any subsequent or other default or impair any right consequent thereon.

4.7     Right of Setoff.  In addition to the other remedies set forth in this Article IV, to the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts the Borrower holds jointly with someone else and all accounts the Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing with respect to the Secured Obligations against any and all such accounts.

## ARTICLE V - SATISFACTION AND DISCHARGE

5.1     Discharge.  When the principal amount of the Note, together with interest thereon and all Secured Obligations shall have been finally and fully paid and/or performed, as applicable, then this Mortgage shall terminate and cease to exist.  Thereupon Lender shall discharge this Mortgage, release its lien on the Mortgaged Property and discharge its registered international interest from the International Registry and Lender shall execute and deliver to Borrower, at Borrower's cost and expense, such instruments in writing as may be reasonably requested by Borrower to evidence such cancellation, discharge and release.

DocuSign Envelope ID: AC2E49DC-F1FF-4F2F-B787-7D199F2F951A

**ARTICLE VI - [INTENTIONALLY OMITTED]**

**ARTICLE VII - MISCELLANEOUS**

      7.1    <u>Severability</u>. If any provision of this Mortgage shall be invalid, inoperative or unenforceable as applied in any particular case in any jurisdiction or jurisdictions or in all jurisdictions, or in all cases because it conflicts with any other provision or provisions hereof or any constitution or statute or rule of public policy, or for any other reason, such circumstances shall not have the effect of rendering the provision in question inoperative or unenforceable in any other case or circumstance, or of rendering any other provision or provisions hereunder contained invalid, inoperative or unenforceable to any extent whatsoever. The invalidity of any one (1) or more phrases, sentences, clauses, Sections or Articles in this Mortgage shall not affect the remaining portions of this Mortgage or any part hereof. In the event of any conflict between any Cape Town Treaty provision in this Mortgage and any provision in this Mortgage not related to the Cape Town Treaty, the provisions relating to the Cape Town Treaty shall prevail.

      7.2    <u>Counterparts</u>. This Mortgage may be executed in any number of counterparts and by the different parties hereto on separate counterparts, each of which when so executed and delivered shall be an original, but all of which shall together constitute one and the same instrument, and all signatures need not appear on any one counterpart. Facsimile signatures and electronic signatures of the parties hereto shall be binding. Notwithstanding the foregoing, in the event Lender requests that Borrower provide an originally executed copy of a document, Borrower shall promptly provide the same, and upon Borrower's failure to do so, Lender may declare the same to constitute an Event of Default.

      7.3    <u>Amendments</u>. Any amendment hereto shall be in writing and shall be signed by Borrower and Lender.

      7.4    <u>Indemnification by Borrower; Expenses</u>.

      (a)    Borrower shall indemnify, reimburse and hold Lender and its officers, directors, employees and agents harmless from and against any and all claims, demands, causes of action, suits or judgments and any and all costs and expenses of any nature (including, without limitation, reasonable fees and expenses of legal counsel), for or on account of injury to or death of persons (including employees and agents of Borrower or Lender), property damage and any other liability which may result from or arise in any manner out of:

      (i)    the ownership, possession, control, management, maintenance, condition, storage, use or operation of all or part of the Mortgaged Property by Borrower or any bailee, transferee or lessee of Borrower, or

      (ii)    any failure on the part of Borrower to perform or comply with any of the terms hereof or in any Loan Document (including, without limitation, any failure by Borrower to effect or maintain any insurance required to be effected or maintained pursuant to the provisions of Paragraph 3.4 hereof);

DocuSign Envelope ID: AC2E49DC-F1FF-4F2F-B787-7D199F2F951A

provided, such indemnification obligations shall not apply to any act or omission involving a breach of this Mortgage by Lender and shall not apply to any act or omission involving gross negligence or willful misconduct by Lender or its representatives.  If Lender shall receive knowledge of any claim or liability hereby indemnified against, Lender shall give prompt notice thereof to Borrower; provided, however, Lender's failure to promptly provide any such notice shall not act as a waiver of any of Lender's rights hereunder.  The obligation contained in this Paragraph 7.4 shall continue in full force and effect notwithstanding the full payment of the Note and all amounts due under the Loan Agreement or hereunder and notwithstanding the discharge hereof pursuant to Paragraph 5.1 hereof or otherwise.

(b)    Borrower shall be responsible for, and shall pay, all fees and expenses incurred by Lender (including the reasonable fees and expenses of its legal counsel) in connection with the enforcement of, or the exercise of any right or remedy of Lender under, this Mortgage or any amendment or supplement hereto.

7.5    Acknowledgment of Receipt of Copy of Mortgage.    Borrower hereby acknowledges and certifies that a full, complete, correct and exact copy of this Mortgage has been delivered to and received by Borrower on the date of its execution.

7.6    Assignment.  Upon written notice to Borrower (except in the case of a partial participation where Lender retains the loan servicing, in which case no notice shall be required), this Mortgage may be freely assigned by Lender without the consent of Borrower, and Borrower shall duly execute an IDERA upon the written request of any assignee.  This Mortgage shall inure to the benefit of Lender, its successors in interest and assigns.  This Mortgage may not be assigned by without the written consent of Lender.

7.7    Notice.  Any notice or other communication required or permitted under this Mortgage or necessary or convenient in connection with this Mortgage shall be sent in the manner set forth in the Loan Agreement.

7.8    APPLICABLE LAW; VENUE.  THIS MORTGAGE AND THE NOTE SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF TENNESSEE, WITHOUT REFERENCE TO ITS CONFLICTS OF LAW PROVISIONS; PROVIDED, THAT THE PARTIES HERETO SHALL BE ENTITLED TO ALL RIGHTS CONFERRED BY THE FEDERAL AVIATION ACT. Any legal action or proceeding may be brought in the courts of competent jurisdiction and venue of the State of Tennessee or the United States District Court sitting in: (i) Knoxville, Tennessee; (ii) the County in which the aircraft is located or believed to be located; or (iii) the principal office or location of Borrower or any Guarantor, all as Lender or its respective successors and permitted assigns, as the case may be, may elect.

7.9    **JURY TRIAL.  BORROWER AND LENDER EACH HEREBY WAIVES THE RIGHT TO ANY JURY TRIAL IN ANY ACTION, PROCEEDING OR COUNTERCLAIM BROUGHT BY EITHER LENDER OR BORROWER AGAINST THE OTHER.**

[signature page follows]

DocuSign Envelope ID: AC2E49DC-F1FF-4F2F-B787-7D199F2F951A

**IN WITNESS WHEREOF,** the parties hereto have caused this Aircraft Mortgage and Security Agreement to be duly executed and delivered, as of the date and year first above written.

**SQRL AVIATION, LLC**

DocuSigned by:

Joseph B. Smith

By: 6EC36296F563456...

Name: Joseph B. Smith
Title: Manager of SQRL Holdings, LLC, Manager of SQRL Aviation, LLC

DocuSign Envelope ID: AC2E49DC-F1FF-4F2F-B787-7D199F2F951A

**IN WITNESS WHEREOF,** the parties hereto have caused this Aircraft Mortgage and Security Agreement to be duly executed and delivered, as of the date and year first above written.

**JB&B CAPITAL, LLC**

DocuSigned by:

Jack Mills

By: ___EE0A6A8A243A4EB..._____

Name: Jack Mills

Title: Manager